**This order is SIGNED.**

**Dated: November 12, 2026**

**PEGGY HUNT**
**U.S. Bankruptcy Judge**

aep

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| In re:<br><br>MAVRICK SCOTT JOHNSON,<br><br>Debtor. | Bankruptcy Case No. 24-24188<br><br>Chapter 7 |
| WILL MORRISON, CHAPTER 7 TRUSTEE,<br><br>Plaintiff,<br><br>v.<br><br>MAVRICK SCOTT JOHNSON,<br><br>Defendant. | Adversary Proceeding No. 25-02142<br><br>Honorable Peggy Hunt |

**FINDINGS OF FACT & CONCLUSIONS OF LAW**

The Court held a trial in the above-captioned proceeding (the "**Proceeding**") on September 30, 2026. Will Morrison appeared as Plaintiff. Steven M. Rogers, Rogers & Russell, PLLC, appeared on behalf of the Defendant. The Court received evidence and heard argument. Plaintiff's Exhibits Nos. 1 – 6 were admitted, and the testimony of the Defendant was received. The Court took the matter under advisement.

Based on the stipulated facts set forth in the *Pretrial Order* [Dkt. No. 15]; the evidence; the arguments of the parties, including those set forth in the *Plaintiff's Trial Brief* [Dkt. No. 17]

and the *Defendant's Trial Brief* [Dkt. No. 18]; the Court's independent review of the law; and good cause appearing, the Court hereby enters the following *Findings of Fact and Conclusions of Law*:[1]

## I. JURISDICTION AND VENUE

1. The Court has jurisdiction over this Proceeding under 28 U.S.C. §§ 157(a) and 1334(b), as well as the District Court's Order of Reference at DUCivR 83-6.1.
2. Pursuant to 28 U.S.C. § 157(b)(1), the Court may hear and determine this Proceeding because it arises under the Bankruptcy Code, arises in the above-captioned bankruptcy case (the "**Bankruptcy Case**"), and is included as a core proceeding under 28 U.S.C. § 157(b)(2)(I).
3. Venue of the Bankruptcy Case and this Proceeding in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. FINDINGS OF FACT

The following Findings of Fact have been stipulated to by the parties as part of the Pretrial Order and are hereby adopted by the Court:

1. The Defendant filed a voluntary petition for Chapter 7 bankruptcy relief on August 20, 2024 (the "**Petition Date**"). The Defendant will be referred to as the "**Defendant**" or the "**Debtor**."

[1] Plaintiff filed *Proposed Findings of Fact and Conclusions of Law* [Dkt. No. 24]. The Court has modified that document as set forth herein.

This ruling constitutes the Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, made applicable here by Federal Rule of Bankruptcy Procedure 7052. Any of the findings of fact herein are also deemed, to the extent appropriate, to be conclusions of law, and any conclusions of law herein are similarly deemed to be findings of fact and shall be equally binding as both.

2. Plaintiff is the duly appointed Chapter 7 Trustee of the Bankruptcy Case. The Plaintiff will be referred to as "**Plaintiff**" or "**Trustee**."

3. The meeting of creditors for the Bankruptcy Case was held on October 1, 2024, and the Defendant appeared for the meeting.

4. At the meeting of creditors the Plaintiff issued a directive to the Defendant, requiring the Defendant to file his 2024 tax returns by February 15, 2025, to provide a copy to the Trustee, and to turn over the pro rata share of the tax refunds belonging to the bankruptcy estate immediately upon receipt of the refunds.

5. The Trustee's directive was subsequently reduced to writing and was filed with the Court on October 8, 2024.

6. A copy of the directive was served upon the Defendant and upon Defendant's counsel in accordance with the certificate of service attached to the directive.

7. In addition to requiring turnover of the pro rata 2024 tax refunds due to the estate, the directive also required turnover of all cash on hand and in bank accounts as of the Petition Date, if directed to be done by the Plaintiff at a later date.

8. On December 4, 2024, Defendant received a discharge in the Bankruptcy Case.

9. Defendant did not provide the Trustee with a copy of his 2024 tax returns by the applicable deadline of February 15, 2025.

10. On April 18, 2025, Plaintiff sent an e-mail to Defendant's counsel requesting a copy of Defendant's 2024 tax returns by April 25, 2025, and turnover of any tax refunds received on the returns.
11. Defendant did not provide a copy of his 2024 tax returns nor turn over any refunds on the returns by April 25, 2025.
12. When Defendant still had not turned over a copy of his 2024 tax returns or any refunds due on the returns by July 18, 2025, the Plaintiff filed a Turn Over Motion seeking turnover of the tax returns, refunds, and funds on hand in bank accounts as of the Petition Date.
13. Defendant did not respond to the Turn Over Motion and the Court subsequently entered an Order granting the Motion on August 18, 2025 (the "**Turnover Order**").
14. Pursuant to the Turnover Order, the Defendant was ordered by the Court to turn over to the Plaintiff: (a) a copy of his 2024 state and federal tax returns; (b) the estate's 64% pro rata share of any refunds due on the tax returns; and (c) $160.77 in cash and funds on hand as of the Petition Date, all within 14 days after entry of the Order.
15. Having not received timely compliance from the Defendant of any of the items required by the Turnover Order, the Plaintiff on September 4, 2025, emailed Defendant's counsel requesting turn over of the past due items by September 11, 2025.

16. On September 25, 2025, Plaintiff sent a second email to Defendant's counsel, again asking for the past due items to be provided, this time by October 10, 2025.

17. In an email response dated October 2, 2025, Defendant's counsel sent Plaintiff a copy of the Defendant's 2024 tax returns.

18. The copy of the 2024 tax returns provided by Defendant's counsel on October 2, 2025, are dated February 8, 2025, and show a federal refund of $5,176.00 and a state refund of $1,770.00 ($6,946.00 total refunds).

19. After reviewing the tax returns and checking the status of the returns on the IRS "Where's My Refund?" website, Plaintiff learned that the 2024 federal tax refund had been paid to the Defendant via direct deposit on February 26, 2025; Plaintiff reported this via email to Defendant's counsel on October 7, 2025, and demanded turnover of the estate's 64% pro rata share of the tax refund money by October 10, 2025, otherwise an adversary complaint to revoke the Defendant's discharge would be filed.

20. Defendant did not turn over the tax refunds by October 10, 2025.

21. Plaintiff then commenced this Proceeding by filing a complaint on October 17, 2025.

22. As of June 1, 2026, Defendant had still not paid any funds to the bankruptcy estate in the Bankruptcy Case, and remains indebted to the estate in the amount of $4,606.21.

In addition to the foregoing Findings of Fact, the Court hereby makes the following additional Findings of Fact based on the evidence, to wit:

23. As of the date of trial, the Defendant had still not made a single payment to the estate.
24. Around the same time the Defendant received the tax refunds, he was evicted from his residence.
25. He used the refunds to secure housing for himself and his children.[2]
26. The Defendant's testimony is that when he spent the refunds, he did not intend to hide anything from or deceive the Trustee.

**III. CONCLUSIONS OF LAW**

1. As the Debtor in the underlying Bankruptcy Case, at all times material herein the Defendant owed the Trustee a duty of cooperation. This duty is found in § 521(a)(3) of the Bankruptcy Code,[3] and is an ongoing duty.
2. The Defendant also has a statutory duty to surrender to the Trustee all property of the estate and any recorded information, including books, documents, records, and papers relating to property of the estate, pursuant to § 521(a)(4).
3. Section 521(a)(4) imposes a duty of production on the Debtor without the necessity of the Trustee filing a turnover motion or conducting discovery. *In re Auld*, 561 B.R. 512, 518 (10th Cir. BAP 2017).

---

[2] At ¶ 3(b) of the Pretrial Order, the Defendant represented that he "blame[d] an ex-girlfried for purportedly taking the money from his bank account."

[3] Title 11 U.S.C. *et seq*. All statutory reference are to the Bankruptcy Code unless stated otherwise.

4. The Court concludes that the Defendant has materially breached his duty of cooperation in the Bankruptcy Case. Among other things, the Defendant breached his duty of cooperation by failing to timely turnover his 2024 tax returns, failing to turnover and surrender to the Trustee the pro rata share of the 2024 tax refunds, and failing to turnover the funds on hand in bank accounts as of the Petition Date.
5. Debtor's breach of his duty of cooperation in the Bankruptcy Case continued unabated for many months, despite the Trustee having made repeated requests for compliance and despite the Court having entered the Turnover Order.
6. The Court further concludes that the Defendant breached his statutory duty to surrender to the Trustee all property of the estate and recorded information.
7. It took the Debtor approximately 8 months after filing the 2024 tax returns in February 2025 to turn over a copy of the returns to the Trustee in October 2025, and as of the date of trial the Debtor had not turned over any of the funds that are due and owing to the bankruptcy estate.

*First Cause of Action: § 727(d)(2)*

8. Section 727(d)(2) provides that "[o]n request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if . . . (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently

failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee[.]"

9. In *Morris v. Morris (In re Morris)*, 2008 Bankr. LEXIS 813, at *17-18 (Bankr. D. Kan. March 26, 2008), the Court stated:

> In order to revoke a discharge under this section, the Trustee must establish the Debtor acquired property of the estate and knowingly and fraudulently failed to report or deliver the property to the Trustee. . . . The controversy focuses upon whether she acted knowingly and fraudulently when failing to deliver the refunds to the Trustee. The term 'knowingly and fraudulently' requires that the debtor be guilty of such acts as would sustain a civil action for fraud or deceit. The debtor's actions must have been taken with the knowing intent to defraud the trustee, or be so reckless as to justify a finding that he acted fraudulently. (citations and internal quotation marks omitted).

10. Further, "The plaintiff may prove knowing and fraudulent behavior by showing that the debtor had access to the omitted information and either knew that failure to disclose it would be seriously misleading or that the debtor acted so recklessly as to imply fraudulent intent." COLLIER ON BANKRUPTCY, ¶ 727.17[4] (Richard Levin & Henry J. Sommer eds., 16th ed.).

11. "The trustee has the burden of proof to establish his revocation of discharge claim by a preponderance of the evidence." *Morris*, 2008 Bankr. LEXIS, at *10.

12. The Court finds the Plaintiff has carried his burden of proof in establishing a basis for revoking the Defendant's Chapter 7 discharge under § 727(d)(2) of the Bankruptcy Code.

13. Specifically, the stipulated facts and the evidence show that during the pendency of the Bankruptcy Case the Defendant acquired property that was property of the bankruptcy estate, namely, the 2024 tax refunds and bank account funds on hand as of the Petition Date, totaling the sum of $4,606.21. Despite knowing the outcome of his 2024 tax returns by at least February 8, 2025, the Defendant failed to report entitlement to such property for a period of almost eight months.

14. The Defendant then failed to deliver or otherwise surrender the property to the Plaintiff. As of the trial date no turnover of funds has occurred, despite the Defendant having been in possession of the funds during the pendency of the Bankruptcy Case, and despite having had more than ample opportunity and time to turnover the funds.

15. The existence of and amount of the 2024 tax refunds were concealed by the Defendant for an extended period of time, which is both unreasonable under the circumstances of this case and without lawful justification, especially considering that 64% of the 2024 tax refunds belonged to the bankruptcy estate.

16. The Defendant admits to having received the tax refunds, and he admits to failing to turn over the portion of the refunds belonging to the estate (64%). Additionally, the Defendant admits that he has failed to turn over the bank account funds due to the estate. The Defendant’s failure to turn over such funds, collectively, is without lawful justification.

17. The Defendant concedes that he is indebted to the bankruptcy estate in the amount of $4,606.21, and that he has not turned over the funds to the estate, despite the time that has now passed, and despite the trustee directive and the Turnover Order requiring him to do so.
18. Thus, the sole issue for purposes of § 727(d)(2) is whether such failure was knowing and fraudulent. The Court concludes that given the entirety of the record and the circumstances in this case, this standard has been met.
19. The amount of time that has elapsed in this case without compliance by the Defendant bears directly on the issue of the Defendant's intent to act knowingly and fraudulently to conceal and withhold the funds from the Plaintiff.
20. The Defendant has made practically no effort to comply with his turnover obligations in connection with the Bankruptcy Case and has not complied with the Turnover Order, which also bears on the issue of intent.
21. The Defendant received the refunds in February 2025 and did not turn over the funds to the Trustee despite repeated communications from the Trustee concerning his obligation to do so. This establishes fraudulent concealment.
22. At the very least, this is the type of reckless disregard for a debtor's obligations under the Bankruptcy Code that justifies a finding that he acted fraudulently. *See Morris*, 2008 Bankr. LEXIS at *17-18; *see also* COLLIER, ¶ 727.17[4].

23. The stipulated facts establish that the Defendant knew of his obligation to turn over the funds through Trustee directives, the Trustee's communications with Defendant's counsel, the entry of the Court's Turnover Order, and the commencement of this Proceeding.
24. Despite this, he did not turn over the funds.
25. The Defendant's testimony that he did not intend to hide anything from or deceive the Trustee is inconsistent with his actions in this Bankruptcy Case. He kept and spent the funds despite knowing that they belonged to the bankruptcy estate. He also disregarded this Court's Turnover Order. *See United States Tr. v. Castro (In re Castro)*, 2017 Bankr. LEXIS 675, at *8 (Bankr. N.D. Iowa March 14, 2017) (finding evidence of fraudulent intent in a directly analogous case where debtor defendant testified she "did not intend to improperly withhold the tax refunds" but the Court found such testimony "inconsistent with [her] actions in this case").
26. Based on the record in the Bankruptcy Case, the stipulated facts, and the evidence before the Court, it is the conclusion of the Court that the Defendant has knowingly and fraudently failed to report the acquisition of the 2024 tax refunds in a prompt and timely manner, and has knowingly and fraudulently failed to deliver or surrender the funds to the Plaintiff (including the bank account funds), in violation of § 727(d)(2) of the Bankruptcy Code.

27. The Court therefore rules in favor of the Plaintiff on his First Cause of Action, and judgment shall enter accordingly, revoking the Defendant's discharge under § 727(d)(2) of the Bankruptcy Code.

<u>*Second Cause of Action: § 727(d)(3)*</u>

28. Even if the Trustee had not met his burden on the First Cause of Action, the Court concludes that Defendant's discharge must be revoked under § 727(d)(3) of the Bankruptcy Code.

29. Section 727(d)(3) provides "[o]n request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if . . . (3) the debtor committed an act specified in subsection (a)(6) of this section[.]"

30. Section 727(a)(6)(A) provides in relevant part that a discharge may be denied where "the debtor has refused, in the case . . . to obey any lawful order of the court[.]"

31. "[F]or purposes of § 727(a)(6)(A), 'refused' means the Debtors could have obeyed the [Court] Order, but they made an intentional choice either to not obey it or to take another action that they knew would make it improbable or impossible for them to obey it." *In re Cableton-Wells*, 657 B.R. 148, 153 (Bankr. D. Utah 2024).

32. To establish a cause of action under § 727(a)(6), the movant must demonstrate that the debtor received the order and failed to comply, and then the burden shifts to the debtor to explain their non-compliance. *Id.*, at 154; *see also*

*Standiferd v. U.S. Tr.*, 641 F.3d 1209, 1212 (10th Cir. 2011). "Ultimately, the court may not deny discharge under 727(a)(6)(A) unless it finds that the debtor's non-compliance was willful." *Id.*

33. "[I]f a debtor's failure to comply is due to inadvertence, mistake, or impossibility, then that could negate a finding of willfulness." *In re Cableton-Wells*, 657 B.R. at 155.
34. Again, the Trustee bears the burden of proving his revocation of discharge claim by preponderance of the evidence. *Morris*, 2008 Bankr. LEXIS, at *10.
35. The Court concludes that the Plaintiff has carried his burden of proof in establishing a basis for revoking the Defendant's Chapter 7 discharge under § 727(d)(3).
36. Specifically, the Court concludes that the Defendant has refused to obey a lawful order of the Court in the Chapter 7 bankruptcy case, namely the Turnover Order, in violation of § 727(a)(6).
37. The refusal of the Debtor to obey the Turnover Order is grounds for revocation of discharge under § 727(d)(3).
38. The stipulated facts establish that the Defendant was aware of the Turnover Order and did not comply. The Defendant does not contend that he misunderstood the Turnover Order. Thus, the Trustee has met his initial burden.
39. Further, the Court concludes that the Defendant's refusal to obey the Turnover Order was willful.

40. The Defendant has had more than ample time and opportunity to comply with the Turnover Order, yet has not done so, requiring the Trustee to bring this Proceeding.

41. The stipulated facts establish that the Defendant received the refunds on February 26, 2025.

42. The Defendant's testimony is that he was evicted from his residence and he used the funds to secure housing for himself and his children.

43. The Court is sympathetic to the difficulty of the Defendant's decision to either comply with a Court order or secure housing. "But this does not constitute impossibility under § 727(a)(6)(A)." *In re Cableton-Wells*, 657 B.R., at 155 (finding in a directly analogous situation that the debtor defendant's decision to pay rent to prevent eviction rather than comply with a tax refund turnover order was sympathetic but not sufficient justification to prevent revocation of discharge under § 727(d)(3)).

44. As stated in *In re Cableton-Wells*, the Defendant "voluntarily entered into the bankruptcy bargain for a financial fresh start through the automatic stay and forgiveness of . . . debt in exchange for turning over their . . . Tax Refunds." *Id.* As non-exempt assets, the tax refunds "no longer belonged to the Debtors, but rather to the Debtors' bankruptcy estate for distribution to their creditors. Thus, from the perspective of the Bankruptcy Code, the Tax Refunds were not the Debtors' money to spend—regardless of how desperately they needed these funds to make rent." *Id.*

45. Despite knowledge of his obligation to turn over the funds, which belonged to the estate, the Defendant made the intentional choice not to do so.

46. As in *In re Cableton-Wells*, "[t]he evidence establishes that the Trustee took extensive efforts to remind and assist the [Defendant] in fulfilling [his] obligations under Chapter 7 to retain [his] discharge." *Id.* at 157.

47. Despite these attempts, the Defendant ignored the Court's Turnover Order and did not turn over the funds to the Trustee. His reasons for not turning over the tax refunds have shifted over time.[4] And, in any event, the Trustee had to file this Proceeding because the Debtor did not notify the Trustee of his situation or provide an explanation for the failure to comply.

48. Thus, the Court concludes that the Defendant's failure to comply with the Turnover Order was willful.The Court therefore rules in favor of the Plaintiff on his Second Cause of Action, and judgment shall enter accordingly, revoking the Defendant's discharge under § 727(d)(3) of the Bankruptcy Code.

49. While the Court understands that this is a harsh remedy, "Congress could not have expressed its will more clearly than it did in § 727. A debtor who does not honor her obligations to turn over estate property is not a debtor to whom this Court is empowered to grant a discharge." *In re Castro*, 2017 Bankr. LEXIS, at *10 (citations and internal quotation marks omitted).

---

[4] *See supra*, n. 2 (At ¶ 3(b) of the Pretrial Order, the Defendant represented that he "blame[d] an ex-girlfried for purportedly taking the money from his bank account", while his testimony at trial was that he used the funds to secure housing).

*Third Cause of Action: Monetary Judgment*

50. Based on the stipulation of the parties and the admission of the Defendant, the Court concludes that the Plaintiff is entitled to a money judgment against the Defendant in the amount of $4,606.21. *See* Pretrial Order, at 6. Therefore, the Plaintiff is entitled to prevail on this Third Cause of Action, and judgment shall be entered accordingly in his favor.

51. In addition, the Court finds cause to assess costs against the Defendant pursuant to Fed. R. Bankr. P. 7054(b) in the amount of $350.00 for the fee incurred to file this Proceeding.

**END OF DOCUMENT**

## DESIGNATION OF PARTIES TO BE SERVED

Service of the foregoing *FINDINGS OF FACT & CONCLUSIONS OF LAW* shall be served to the parties and in the manner designated below.

**By Electronic Service**: The parties of record in this case, as identified below, are registered CM/ECF users.

- **William P. Morrison** willmorrison01@gmail.com
- **Will Morrison tr** trusteemorrison@gmail.com, wm@trustesolutions.net
- **Steven M. Rogers** srogers@roruss.com, nrussell@roruss.com;rorusslaw@gmail.com;paralegal@roruss.com;r47264@notify.bestcase.com;bwhiting@roruss.com
- **Nicholas R. Russell** nrussell@roruss.com, paralegal@roruss.com;rorusslaw@gmail.com;srogers@roruss.com;bwhiting@roruss.com;r47264@notify.bestcase.com

**By U.S. Mail**: In addition to the parties receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

*None.*